IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DEVANTE LEE JOHNSON | § | |
| v. | § | CIVIL ACTION NO. 6:20cv485 |
| | | (Crim. No. 6:17cr72-4) |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Movant Devante Johnson, proceeding *pro se*, filed this motion to vacate or correct his federal sentence under 28 U.S.C. §2255. The motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Johnson pleaded guilty to possession with intent to distribute methamphetamine and aiding and abetting, and possession with intent to distribute methamphetamine on premises where children are present, on May 22, 2018. He received two concurrent sentences of 180 months in prison on November 16, 2018. Johnson took a direct appeal of his conviction, but the appeal was summarily dismissed on June 17, 2019, as barred by the waiver of appeal provision in the plea agreement which Johnson signed.

**II. The Present §2255 Motion to Vacate Sentence**

In his motion to vacate sentence, Johnson asserts that he received ineffective assistance of counsel during pre-trial, and sentencing, and on appeal, and that he was a minor or minimal participant and therefore entitled to a mitigating role adjustment under 18 U.S.C. §3582(c).

1

A. Ineffective Assistance by Pre-trial Counsel

Johnson asserts that prior to trial, counsel failed to: (1) communicate with him and inform him of the relevant circumstances and likely consequences of proceeding guilty as opposed to going to trial; (2) file any substantive pre-trial motions; (3) conduct an adequate and independent investigation; and (4) attempt to negotiate a favorable plea agreement.

Johnson says that his appointed attorneys, who at various times were Carlo D'Angelo, Lance Larison, and Bobby Mims, did not consult with him about the means to accomplish his objectives other than pushing him to plead guilty. He complains that there was not regular communication with his attorneys about his case and that their visits were inadequate to build up a defense, lasting usually 30 minutes and sometimes up to an hour if disagreements arose.

According to Johnson, the attorneys did not investigate the facts of the case, but convinced him that by pleading guilty, he would be looking at no less than a 15-year sentence, while he could get 40 to 50 years if he went to trial and lost. He claims that counsel could not lay out a strategy and simply "gave up the fight," and so it became clear to him that going to trial was not an option. Johnson states that he "had viable defenses to win his case," but the attorneys did not believe in him or his side of the story. The attorneys also did not provide him with sufficient information to participate in decisions about his case.

Next, Johnson asserts that counsel did not file any pre-trial motions such as requests for discovery, a motion to dismiss, or a motion to suppress. He asked counsel to give him copies of discovery, to no avail.

Johnson contends that there was "no physical evidence presented in court" except for the Government's witness, whom he describes as "a lying confidential informant whose criminal history includes terroristic threat on a children's day care center and was a drug addict." He says that the informant pledged to help the Government in exchange for being allowed to keep money from drug deals and that the informant repeatedly lied to investigators.

Johnson maintains that counsel's failure to discuss the discovery with him was "the breaking point of the case" because it caused them to miss the fact that Johnson had played a very small role. He further contends that he never received a copy of the plea agreement and never understood what he agreed to because counsel "failed to decipher what the plea agreement encompasses." Because he did not get copies of the discovery, Johnson states that he could not make an informed decision as to whether to plead guilty or proceed to trial; had he had this opportunity, Johnson asserts that "there is a reasonable probability that he would have opted to proceed to trial or asked for a better plea offer."

Johnson further asserts that counsel failed to conduct any pre-trial investigation, failed to research the case law, and failed to interview witnesses. Counsel failed to move for a private investigator and failed to question the lack of physical evidence apart from the lying confidential informant.

Specifically, Johnson says that count 15 of the indictment was part of his relevant conduct, and he tried to get counsel to talk to his brother Carlton Johnson, who could have testified that Johnson had nothing to do with the transaction in Count 15.  Thus, Johnson says counsel would have discovered that Johnson should not be accountable for the drugs in that transaction.

Similarly, Johnson asserts that counsel failed to investigate the fabricated statements of the confidential informant, the government's evidence, the warrants, Johnson's state prison release progress, his brother being shot, his mental and depressive issues including the fact that his involvement in the case began after his brother was shot, his being put on suicide watch, his suffering from post-traumatic stress disorder amplified by the fact that a police dog bit him, and the fact that one of the lead sheriff's investigators was under investigation for perjury.

Johnson also says he provided counsel with "many leads" to prove his employment status and that his parole officer could testify that Johnson had not had any dirty drug tests, but instead had always reported on time and paid his fees.  He says his parole officer could not believe that Johnson

was involved in the present case because Johnson had been doing well on parole and was almost at the end of his time.

Johnson complains that counsel failed to raise a *mens rea* argument in that the indictment did not charge him with willingly doing anything, so "no one could tell or knows whether Johnson was forced to join the instant case or to distribute or possess any guns." He says the charges were "defective" and he was given points for a gun which was never proven by the evidence.

Next, Johnson states that he had "no choice" but to plead guilty to the first and only plea agreement offered to him because his attorneys made clear that there was no way they were taking the case to trial. He says it was "a mistake" to accept a plea offer of no less than 180 months because he played a very minor role and the sentence over-represents the seriousness of his participation. He likens his case to Lafler v. Cooper, 132 S.Ct. 1376 (2012), saying he was misinformed by counsel about the likely consequences of pleading guilty rather than going to trial. Instead, he says there is a reasonable probability that he would have proceeded to trial or pleaded guilty without waiving his right to appeal had counsel not "affirmatively misadvised him" regarding his case. Counsel also failed to inform him of the substance of the plea agreement. Thus, Johnson says that based on counsel's advice, he pleaded guilty and received a 180 month sentence, but had he been properly advised, he would have been able to make an informed decision of whether to proceed to trial or plead guilty without a written plea agreement.

Johnson states that he filed a *pro se* motion to withdraw his guilty plea, which he later withdrew, and a motion for a psychological examination, which was denied on September 4, 2018. He says that the Court found a psychological examination was not necessary, but the Court is not an expert and should have allowed Johnson to be examined by experts in the field of psychology. Johnson states that he was also advised by counsel to withdraw his motion because it was angering the U.S. Attorney.

4

B. Ineffective Assistance by Sentencing Counsel

Johnson complains that sentencing counsel, Bobby Mims, (1) failed to review, discuss, and explain the pre-sentence investigation report (PSR) prior to sentencing, and (2) failed to file substantive objections to the PSR. He asserts that Mims did not review the PSR with him before sentencing and filed objections to the PSR, but then withdrew them at sentencing. Johnson states that Mims did not argue for mitigation of the sentence because he could not argue for a sentence of less than 180 months under the plea agreement.  According to Johnson, he believed the Court could sentence him under 180 months based on his background, progress, accomplishments since being in prison and released, and the financial status of his children, and he only found out at sentencing what the plea agreement was all about.

Furthermore, Johnson contends that Mims did not properly argue for a mitigating role as Johnson was a minimal participant, nor did Mims object to the lies and mistakes of the U.S. Attorney. He again asserts that Mims did not object to the drug calculation attributed to Johnson on the ground that Johnson was not involved in Count 15.  Johnson also states that the U.S. Attorney claimed that Johnson had a prior conviction for child endangerment where he left a child in the car, but "the truth is Johnson jumped out of the car and the car continued to move because he did not put it in park as he thought he did and it ran into a recycling building that was owned by some Hispanics." He says the officer wrote in the report that the car almost ran a teen kid over, which was "basically not true," but Johnson did not know the law and got probation for that charge. He says "there were other mistakes too but Mims did not bother to correct [the U.S. Attorney]."

C. Ineffective Assistance by Appellate Counsel

Johnson complains that his appellate counsel, John Andrew Kuchera, failed to communicate with him at all about his appeal and as a result, he had no input.  He concedes that the Government moved to summarily dismiss the appeal because it was barred by the waiver of appeal provision and the Court lacked jurisdiction over his second issue because it was not ripe, but insists that there were a plethora of issues which could have been raised on appeal, including the question of whether his

plea was knowing and voluntary and whether the district court erred in denying his motion to withdraw the plea and for a psychological examination.

### D. Mitigating Role Adjustment

Johnson states that Amendment 794 to the U.S. Sentencing Guidelines provides additional guidelines to the courts in determining whether a mitigating role adjustment applies, including for minor and minimal participants. He asserts that the Amendment was intended to clarify the application of U.S.S.G. §3B1.2 and may be considered in determining whether the court erred in applying the Guidelines to Johnson's case.

## II. The Government's Response

In its response, the Government asserts that Johnson's claims of ineffective assistance of counsel are refuted by the record and that in fact, Johnson benefitted from the services of counsel; had he gone to trial, his sentencing range under the Guidelines would have been 262 to 327 months plus an additional 60 months on Count 12, for a total sentencing exposure of 322 to 387 months, but the Court only imposed a sentence of 180 months, consistent with the stipulations in the parties' plea agreements.

The Government notes that Johnson requested that D'Angelo withdraw, claiming lack of communication, and the Court appointed Larison in his place. After entering his plea, Johnson complained about Larison, and the Court appointed Mims.  The Government argues that Johnson's claims of ineffective assistance of counsel are conclusory, asserting that, for example,  Johnson does not state what objections Mims should have made or how such objections would have changed to outcome of the proceeding, nor what motions counsel should have filed.

Although Johnson complains appellate counsel did not communicate with him, the Government states that Kuchera wrote ten letters to Johnson responding to his arguments and requests.  The Government also notes that appellate counsel may select the issues he believes most likely to succeed.

With regard to Johnson's claim about a mitigating role adjustment, the Government argues that this contention is procedurally barred and also barred by the waiver of appeal provision. In addition, the Government states that Johnson provides no evidence that he was a minor or minimal participant.

### III. Johnson's Reply to the Government's Response

In his reply, Johnson again argues that counsel, without investigating the facts of the case, convinced him he would be looking at 40 to 50 years if he went to trial, but not less than 15 years if he pleaded guilty.  He says that he wholly replied on counsel's advice and was advised to answer the questions affirmatively during the plea hearing. He complains that counsel gave him no alternatives and as a result, he was prejudiced by receiving a 15 year sentence.  Much of Johnson's reply to the Government's response consists of repeating verbatim the allegations of his complaint.

### IV. The Guilty Plea Proceeding

At the guilty plea proceeding, Johnson was placed under oath and testified that he wished to waive his right to proceed before the District Judge and allow the Magistrate Judge to take his plea. He gave his name and said that he was 25 years old, and went through the 10th grade in school.  He said that he had been taking anti-depressants for five days and was on suicide watch, but Larison advised the Court that Gregg County had placed Johnson on suicide watch out of an abundance of caution. Larison also stated that Johnson had asked him to talk to the Gregg County Sheriff's Department to get him moved back into population, and that Johnson had been able to assist him and he believed Johnson was competent.

Johnson testified that he was satisfied with Larison's representation, stating that he had received a copy of the indictment and had reviewed the charges and the facts of the case with Larison. After discussing the facts and charged, he stated that it was his desire to plead guilty.

After Johnson waived the reading of the indictment, the Court asked if he understood that he was charged with the offenses listed in Counts 10 and 11, and Johnson said yes. The Court advised Johnson that the range of punishment for Count 10 was imprisonment for five to 40 years,

a fine of up to $5 million, a term of supervised release of up to four years, a mandatory special assessment of $100, forfeiture of property involved in the crime, and costs of incarceration and supervision.  The range of punishment for Count 11 was imprisonment up to 20 years, to be served consecutively to any other sentence, a fine of up to $250,000, a term of supervised release of not more than a mandatory special assessment of $100, forfeiture of property involved in the crime, and the costs of incarceration and supervision. Johnson acknowledged understanding of the range of punishment. (Docket no. 249, pp. 10-11).

The Court stated that the plea agreement addendum would be addressed, and Larison said that he had reviewed the addendum with Johnson. Johnson testified that he had no questions or concerns about the plea agreement addendum.

The U.S. Attorney then summarized the plea agreement, stating that this agreement called for Johnson to plead guilty to counts 10 and 11 and gave the range of punishments for each. The parties stipulated to a base offense level of 30 for Count 10, and then there is a two-level increase for Count 11 because a dangerous weapon was possessed.  There is also a three-level reduction for acceptance of responsibility if Johnson demonstrates such acceptance. These stipulations are not binding on the Court.

The agreement further provided that Johnson would forfeit $1800 in cash proceedings and that the Government agrees not to prosecute him for any additional non-tax related charges. Remaining charges against Johnson would be dismissed at sentencing. Johnson knowingly and voluntarily waives any appeal, including §2255 proceedings, except for a punishment imposed in excess of the statutory maximum or a claim of ineffective assistance of counsel.

Johnson testified that these were the terms of his plea agreement with the Government and that there was nothing in the agreement that he did not understand. He said that no one had made any promises, other than those in the agreement, in exchange for his plea and that no one had attempted to force him to plead guilty. Johnson stated that he was pleading guilty because he was in fact guilty. (Docket no. 249, pp. 13-14).

The Court then explained that although the U.S. Sentencing Guidelines are advisory, a Guideline sentence would be calculated and the Guidelines could apply in his case. Johnson stated that he had discussed the application of the Guidelines with his lawyer, and the Court stated that even though Johnson and the Government had reached certain agreements regarding sentencing, the Court would not be able to determine the Guideline sentence until after the pre-sentence report had been completed and Johnson and the Government had a chance to challenge the facts and calculations of the probation officer. Johnson stated that he understood. The Court asked if Johnson realized that based on the stipulations in the pre-sentence agreement, he would not argue for a sentence less than 180 months, and Johnson acknowledged this.

The Court advised Johnson that the Court was not bound by the stipulations of the parties and that the parties agreed other characteristic or guideline adjustments could increase or decrease the sentencing range, and Johnson stated that he understood. Johnson also acknowledged that the sentence imposed could be different from estimates given by his attorney, the Government, or the probation officer, and that he was still bound by his plea of guilty even if the sentence is more severe than he anticipated. (Docket no. 249, p. 16).

Turning to the guilty plea itself, the Court reminded Johnson that he had two options, pleading guilty or going to trial, which Johnson said he understood. The Court advised him that under the Constitution, he had a right to a trial by jury, the presumption of innocence, the right to counsel, the right to testify on his own behalf and to compel the attendance of witnesses on his behalf, the right to cross-examine adverse witnesses, and the right to a speedy and public trial. Johnson acknowledged that he was giving up these rights by pleading guilty. (Docket no. 249, p. 17).

The Court next reviewed paragraph 11 of the plea agreement, dealing with Johnson's appellate rights, and said "I want to confirm that you understand that you have waived your right to appeal your conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds," to which Johnson replied "yes, sir." The Court stated "do you also understand you have

agreed you will not contest those same things in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C., section 2255," and Johnson again replied "yes, sir." Johnson also expressed understand that he had reserved the right to appeal only a punishment imposed in excess of the statutory maximum or a claim of ineffective assistance of counsel, and he had also reserved the right to seek collateral review of that issue. (Docket no. 249, pp. 17-18).

After Larison stated that he had informed Johnson of the consequences of his plea and that he believed Johnson understood what he is doing and acted voluntarily, the Court asked the U.S. Attorney, Mary Ann Cozby, to establish a factual basis for the plea. Cozby read the elements for Counts 11 and 12 and asked Johnson if he was the same Devante Johnson named in the indictment, to which Johnson replied "yes, ma'am." He testified that on April 21, 2017, he distributed more than five grams of actual methamphetamine from his car at the corner of Johnson and Monroe Streets in Cherokee County, Texas, for which he received $1800 plus an additional sale of methamphetamine. He possessed a firearm during this sale and a child under the age of 18 years was in his car at the time of the sale.  (Docket no. 249, p. 20).

Cozby advised the Court that Johnson and his attorney signed the factual resume, and Larison offered no objection. Johnson testified that he understood each of the elements of the offenses and that these are the matters which the Government has to prove beyond a reasonable doubt.  He testified that everything in the factual basis was true and correct and acknowledged that by admitting engaging in this conduct, he was admitting the charges against him in Counts 10 and 11 and waiving any defenses he may have to those charges. (Docket no. 249, p. 22).

Johnson stated that he believed he understood everything which had happened and that he had no questions and did not need to talk to his attorney. He entered pleas of guilty to Counts 10 and 11 of the indictment, and the Court found that he was competent and capable of making an informed plea and that the plea of guilty was knowingly and voluntarily made.  (Docket no. 249, p. 23).

**V. The Sentencing Proceeding**

At sentencing, after securing a waiver to proceed by video, the Court asked Mims about Johnson's *pro se* motion to withdraw his plea. Mims stated that Johnson had advised him just ten minutes ago that he was not going to urge his motion to withdraw the plea, and Johnson acknowledged that this was correct, explicitly stated that he wished to withdraw the motion. (Docket no. 352, p. 3).

The Court then asked Mims about objections to the pre-sentence report, and Mims stated that the objections had been addressed and were withdrawn.  The Court found that the information in the pre-sentence report had sufficient indicia of reliability to support its probable accuracy and adopted the factual findings, the undisputed facts, and the advisory guideline applications in the report. Thus, the Court stated that the total offense level was 31, the criminal history category is 6, and the guideline range is 188 to 235 months.  Supervised release is four years on Count 10 and three years on Count 11, running concurrently, the fine range is $30,000 to five million dollars, restitution is not applicable, there is a $200 special assessment, and Johnson is ineligible for probation.

The Court then asked Mims to address the defendant's sentencing memorandum. Mims stated that there were a couple of small errors in the memorandum, in that it says Johnson is 25 instead of 26 and that Johnson does not have a conviction for family violence, but only an arrest.

In making a statement on behalf of Johnson, Mims stated that Johnson had dropped out of school but had gone on to earn a GED.  He started into hydro-blasting as legal employment.  Mims added that Johnson was a loving father, although he had made some mistakes with his children, and that his long term goals are to complete his sentence and gain lawful employment.  Mims argued that a sentence of 235 months, as the probation officer recommended, was almost as much time as Johnson had been alive, and that such a sentence would be excessive; he asked for the 180 month minimum sentence as stipulated by the parties.

Cozby stated that the Government agreed with the probation officer's recommendation of a 235 month sentence, noting that Johnson had distributed methamphetamine from his car on two

different occasions, once with his toddler-age daughter in the back seat. Cozby said that Johnson received the benefit of having a two level increase for possession of a firearm instead of a separate 924(c) conviction, and also having a two level increase for selling drugs in the presence of his child instead of being charged separately for that.  She stated that Johnson had 14 criminal history points including multiple assault charges, he had 31 prior arrests, and he was on parole at the time of this incident. When Johnson was arrested, Cozby stated that he fled from the police, running through back yards and into a woman's house, breaking her window.

The Court stated that there was no basis for a downward departure after considering the guideline range, and the nature and circumstances of the offense would be considered as well as the nature and history and characteristics of the defendant, including his age, children, circumstances growing up, his obtaining a GED, his certificate in hydro-blasting, and his history of crime and running from the police. The Court then allowed Johnson the opportunity to speak.

Johnson stated that he apologized for his actions and said "it's something that the United States of America won't have to worry about anything - me being released and rehabilitating myself even more than what I've already rehabilitated myself. And just - I want to say I'm sorry to my family and to this Court, and to anybody I harmed in the incident I committed." (Docket no. 352, p. 13). The Court then imposed sentence of 180 months in prison, waived the fine, assessed the mandatory special assessment of $200, and imposed a period of four years of supervised release following his release from incarceration.

## VI. Discussion

### A. General Standards for §2255 Proceedings

The first paragraph of 28 U.S.C. §2255 sets out the claims which are cognizable under the statute. These are: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack.

The general rule is that §2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been raised on direct appeal. United States v. Scruggs, 691 F.3d 660, 666-67 (5th Cir. 2012); United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995). Instead, §2255 provides recourse only for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. United States v. Gobert, 137 F.3d 315, 318 (5th Cir. 1998).

B. Standards for Ineffective Assistance of Counsel Claims

In order to prevail on an ineffective-assistance claim, the movant must demonstrate (1) that counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004); United States v. Bogomol, slip op. no. 18-11486, 2021 U.S. App. LEXIS 24148, 2021 WL 3620444 (5th Cir., August 13, 2021), *citing* Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In the context of a guilty plea, counsel's performance is deficient when counsel's advice "leaves the defendant unable to make an informed and conscious choice to plead guilty." Cavitt, 550 F.3d at 441.  Under the prejudice prong, the defendant must show a reasonable probability that but for counsel's errors, he would not have pleaded guilty, but would have insisted on going to trial. United States v. Shepherd, 880 F.3d 734, 743 (5th Cir. 2018);  United States v. Green, 882 F.2d 999, 1002 (5th Cir. 1989).  Factors relevant to determining whether a defendant would have gone to trial can include the risks he would have faced at trial, his representations about his desire to retract his plea, and the district court's admonishments.  United States v. Batamula, 823 F.3d 237, 240 n.4 (5th Cir. 2016).  The movant must substantiate any preference to proceed to trial with contemporaneous evidence, not *post hoc* assertions. United States v. Valdez, 973 F.3d 396, 403 (5th Cir. 2020); United States v. Lozano, 757 F.App'x 348, 2018 U.S. App. LEXIS 35539 (5th Cir. 2018), *citing* Lee v. United States, 137 S.Ct. 1948, 1967 (2017).

C. Ineffective Assistance Pre-Trial

Johnson contends that prior to trial, counsel did not communicate with him and inform him of the relevant circumstances and likely consequences of proceeding guilty as opposed to going to trial, did not file any substantive pre-trial motions, did not conduct an adequate and independent investigation; and did not attempt to negotiate a favorable plea agreement.

At his plea proceeding, however, Johnson testified that he reviewed and discussed the charges and the facts of the case with his attorney, he understood the charges against him and the plea agreement, and he understood the range of punishment. The Supreme Court has stated that solemn declarations in open court carry a strong presumption of verity. Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). As a result, the movant faces the heavy burden of proving that he is entitled to relief. *See* Deville v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994); United States v. Diaz, 733 F.2d 371, 373-74 (5th Cir. 1984).

The critical question is whether the entry of the petitioner's guilty plea was knowing and voluntary; in order to meet his burden of proving he is entitled to relief, the petitioner must overcome the evidence of his own words. *See* United States v. Raetzsch, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf.* United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir. 1985) (to be entitled to evidentiary hearing on claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third person").

Johnson's sworn statements in open court, which are entitled to this "strong presumption of verity," contradict his claims that counsel did not communicate with him or inform him of the relevant circumstances and consequences. The Fifth Circuit has explained that the consequences of a guilty plea, with respect to sentencing, means only that the defendant must know the maximum prison term and fine for the offense charged, and as long as the defendant understands the length of

time he might possibly receive, he is fully aware of the plea's consequences. <u>United States v.</u> <u>Guerra</u>, 94 F.3d 989, 995 (5th Cir. 1996).  The Court specifically discussed the range of punishment with Johnson, who acknowledged understanding.  Johnson has failed to show ineffective assistance of counsel in this regard.

Johnson next complains that counsel did not file any substantive pre-trial motions, such as motions for discovery, to dismiss the charges, or a motion to suppress. A discovery order was entered by the Court on February 15, 2018, without need of a defense motion. (Docket no. 125). Johnson offers nothing to suggest that a motion to dismiss or a motion to suppress would likely have been granted, nor that but for the failure to file a such a motion, the result of the proceeding would probably have been different.  This is particularly true given Johnson's testimony that he was guilty of the offenses charged. Counsel has no duty to file meritless motions and there is no ineffectiveness when counsel fails to do so. <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999). This claim is without merit.

Johnson also contends that counsel failed to investigate the case.  The Fifth Circuit has held that a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. <u>United States v. Green</u>, 992 F.2d 999, 1003 (5th Cir. 1989).

In this regard, Johnson asserts that Count 15 of the indictment was part of his relevant conduct, but that had counsel investigated, he would have discovered that according to Johnson's brother Carlton, Johnson had nothing to do with this transaction, which involved a sale of some 23.42 grams of 96 percent pure methamphetamine to a confidential informant on May 15, 2017. This claim is wholly conclusory; the pre-sentence report shows that on that date, a confidential informant from the Cherokee County Sheriff's Office purchased the methamphetamine for $600 from Carlton Johnson, with Devante Johnson present.  The sale was made out of Devante Johnson's car and Carlton Johnson gave Devante Johnson $100 of the money he received from the sale to the confidential informant.   Although Johnson derides the confidential informant as a liar, his

conclusory allegation as to what an investigation would have revealed is insufficient to support relief under §2255.  United States v. Woods, 870 F.2d 285, 288 n.3 (5th Cir. 1989).  This claim is without merit.

Similarly, Johnson asserts that counsel failed to investigate the fabricated statements of the confidential informant, the government's evidence, the warrants, Johnson's state prison release progress, his brother being shot, his mental and depressive issues including the fact that his involvement in the case began after his brother was shot, his being put on suicide watch, his suffering from post-traumatic stress disorder amplified by the fact that a police dog bit him, and the fact that one of the lead sheriff's investigators was under investigation for perjury.  These allegations are likewise conclusory and thus without merit.

Johnson also argues that counsel failed to raise a "mens rea" argument, saying that "the indictment never says that he willingly did anything," so no one knows if he was forced to join the drug conspiracy or to distribute or possess any guns.  In fact, both Counts 10 and 11 charge Johnson with acting "knowingly and intentionally," which is the *mens rea* for the offenses with which he was charged. This claim is without merit.

Although Johnson asserts that he played a minor or minimal role in the offense, he offers nothing to show this was in fact the case.  He admitted that he possessed and distributed more than five grams of actual methamphetamine to another person, while possessing a firearm and having his young daughter in the back seat of his car.  The Fifth Circuit has explained that a "minor or minimal role" refers to a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.  United States v. Montes-Quintana, 851 F.App'x 532, 2021 U.S. App. LEXIS 19999, 2021 WL 2816219 (5th Cir., July 6, 2021), *citing* U.S.S.G. §3B1.2, comment n.3(A); *accord*, United States v. Torres-Hernandez, 843 F.3d 203, 290- 10 (5th Cir. 2016) (drug courier who transported a bundle of marijuana on his back was not entitled to an adjustment as a minor participant). This claim is without merit.

Johnson next contends that counsel did not attempt to negotiate a favorable plea deal. The record shows that had Johnson gone to trial and lost, he faced a sentencing range under the Guidelines of 322 to 387 months.  More significantly, had he been convicted on both Counts 10 and 11, he faced a sentence of 5 to 40 years on Count 10 and a sentence of up to 20 years on Count 11, which would have run consecutively to the sentence he received on Count 10. Instead, Johnson received a total sentence of 180 months, significantly below the Guideline range he faced without the plea deal. Johnson has failed to show that counsel acted ineffectively in this regard or that he would have obtained a more favorable plea but for this alleged ineffectiveness. His claim on this point is without merit.

Johnson cites Lafler v. Cooper, in which counsel gave his client constitutionally deficient advice by advising him to reject the plea he was offered, telling his client incorrectly that the prosecution would be unable to establish intent to murder because the victim had been shot below the waist. As a result, the petitioner rejected an offer of 51 to 85 months in prison. After going to trial and getting convicted, he received a mandatory minimum of 185 to 360 years in prison. The Supreme Court held that counsel's performance was deficient and the petitioner established a reasonable probability that he would have accepted the plea offer but for counsels erroneous advice, and determined that the proper remedy was to direct the State to re-offer the plea agreement.

In the present case, by contrast, counsel advised Johnson to accept the plea offer, which resulted in his receiving a sentence considerably shorter than he faced had he gone to trial and lost. Johnson has failed to show that this advice was constitutionally deficient, nor that he suffered harm as a result. He has not identified any defenses which likely would have prevailed at trial, particularly in light of the fact that he admitted selling methamphetamine to a confidential informant. Johnson's claim on this point is without merit.

D. Ineffective Assistance at Sentencing

Johnson complains that at sentencing, Mims failed to review, discuss, and explain the pre-sentence investigation report prior to sentencing and failed to file substantive objections to the PSR.

He again complains that he did not understand what he was accepting when he signed the plea offer, but this claim was refuted by his testimony at the plea proceeding.

Johnson complains that Mims did not argue for a mitigating role as a "minimal participant," but he fails to show that he was in fact a minimal participant or that had Mims made this argument, the result of the proceeding would probably have been different.  He also complains that Mims did not "object to the lies and mistakes the U.S. Attorney made," pointing specifically to a statement that Johnson had a prior conviction for child endangerment where he left a child in the car; in fact, Johnson says what happened was he jumped out of the car but forgot to put it in park, and the car kept moving and ran into a recycling building owned by some Hispanics. The officer wrote in the report that the car almost ran over a teenager but Johnson says this was not true. He did not know the law and received probation.

The U.S. Attorney stated that according to paragraph 44 of the pre-sentence report, Johnson had a conviction in which he abandoned a child in a car while fleeing from the police, and he received a sentence of probation which was later revoked. (Docket no. 352, p. 10). This is an accurate recitation of paragraph 44, which states that court records show Johnson fled from a peace officer attempting to detain him and placed a child under the age of 15 in danger by jumping out of the driver's seat and leaving the vehicle to run into a building. He received probation which was later revoked and Johnson was sentenced to 18 months in prison.  Johnson has not shown that Mims could have raised any viable objection on this point, nor does he point to "other mistakes" to which Mims could have objected.  *See, e.g.*, Aragon-Rangel v. U.S., civil action no. EP-05-CA-204, 2005 U.S. Dist. LEXIS 16064, 2005 WL 1926635 (W.D.Tex., August 4, 2005) (stating that "insofar as Aragon faults Calhoun for failing to file objections to incorrect information contained in the PSR, the court finds that his allegations are conclusory and insufficient to state a claim for constitutionally ineffective assistance of counsel.  Aragon fails to identify what information was erroneous and what difference, if any, the correct information would have made to his sentence.") Johnson likewise does not show that had Mims acted differently, the result of the sentencing proceeding would probably

18

have been different. This is particularly true given that Johnson received the minimum sentence which could have been imposed. His claim on this point is without merit.

Johnson contends that he filed a motion to withdraw his guilty plea, which he withdrew at sentencing, and a motion for a psychological examination, which the Court denied on September 4, 2018. He says that the Court stated he was communicating clearly at the hearing and that based on consistent communications with Johnson, a psychological exam was not warranted. However, Johnson states that the Court is not an expert to determine that he was psychologically capable of entering a guilty plea and thus should have allowed him to be examined by experts and decide once medical reports were submitted.

To the extent this is a separate claim for relief, it is barred by the waiver of appeal provision in Johnson's plea agreement. In addition, such a claim lacks merit because Johnson withdrew his motion to withdraw his guilty plea at sentencing and was found competent by the Court at a motion hearing and again at the guilty plea proceeding.  (Docket no. 351, p. 7; docket no. 249, p. 23).  *See, e.g.*, United States v. Pontefract, crim. no. 08-cr-69-01, 2010 U.S. Dist. LEXIS 1122, 2010 WL 55489 (W.D.La., January 6, 2010) (court finding of competence based upon observing and communicating with the defendant). This claim is without merit.

E. Ineffective Assistance on Appeal

Johnson complains that his appellate counsel failed to communicate with him at all about his appeal and as a result, he had no input.  He acknowledged that the Government moved to summarily dismiss the appeal because it was barred by the waiver of appeal provision and because the Court lacked jurisdiction to consider his second issue because it was not ripe, but contends that there were issues which could have been raised on appeal, including the question of whether his plea was knowing and voluntary and whether the district court erred in denying his motion to withdraw the plea and for a psychological examination.

In his direct appeal, Johnson argued that the district court's assessment of special conditions on supervised release constituted impermissible delegations of judicial authority to the  probation

officer, and the district court's requirement that Johnson pay any costs associated with treatment and testing is unconstitutional in that it allows for the possibility of imprisonment for a debt. The Government filed a motion asking that the appeal be summarily dismissed as barred by the waiver of appeal provision and is foreclosed by U.S. v. Scallon, 683 F.3d 680, 682-84 (5th Cir. 2012), which held that challenges to the terms of supervised release fall within the scope of an appeal waiver.  The Government also argued that the claim concerning imprisonment for a debt is not ripe for review. The Fifth Circuit agreed and summarily dismissed the appeal.

The Fifth Circuit has held that to prevail on a claim of ineffective assistance of counsel on appeal, the petitioner must make a showing that had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. Sharp v. Puckett, 930 F.2d 450, 453 (5th Cir.1991), *citing* Strickland, 466 U.S. at 694. In a counseled appeal after conviction, the key is whether the failure to raise an issue worked to the prejudice of the defendant. Sharp, 930 F.2d at 453. This standard has been affirmed by the Supreme Court.  Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000) (holding that the petitioner must first show that his appellate attorney was objectively unreasonable in failing to find arguable issues to appeal, and also a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief raising these issues, he would have prevailed on his appeal); *see also* U.S. v. Reinhart, 357 F.3d 521, 530 (5th Cir. 2004) (in order to establish prejudice for a claim of ineffective assistance of counsel on appeal based upon failure to raise a particular issue, the petitioner must show that the appellate court would have afforded relief on appeal).

Johnson has failed to show that counsel was objectively unreasonable in failing to raise the issues of the voluntariness of his plea or the propriety of denying his *pro se* motion to withdraw the plea.  Like the claims actually raised in Johnson's appeal, both of these contentions were barred by the waiver of appeal contained in the plea agreement and thus would be subject to the same summary dismissal that the Fifth Circuit entered. Even were this not the case, Johnson's claim of ineffective assistance of counsel on appeal lacks merit because Johnson offers nothing to suggest

that he would have been granted relief on either of these claims. Johnson testified that he was entering his plea knowingly and voluntarily, and that he wished to withdraw his motion to withdraw the plea.  His statement of issues which could have been raised on direct appeal do not show that the district court committed reversible error, and Johnson has thus failed to meet his burden of demonstrating ineffective assistance of counsel on appeal.  His claim on this point is without merit.

F. Amendment 794

Johnson asserts that Amendment 794 to the U.S. Sentencing Guidelines provides additional guidelines to the courts in determining whether a mitigating role adjustment applies, including for minor and minimal participants. However, he has offered nothing to suggest that he was a minor or minimal participant; on the contrary, he pleaded guilty to selling methamphetamine while possessing a firearm and with a child in the car.

In any event, the Fifth Circuit has made clear that a court's technical application of the sentencing guidelines does not give rise to a constitutional issue cognizable under §2255. United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 2016); United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) (claims of misapplication of the Sentencing Guidelines are not cognizable under §2255). Johnson's §2255 claim on this point is without merit.

Under certain circumstances, the district court may reduce a sentence based upon an amendment to the Guidelines, as set out in 18 U.S.C. §3582(c)(2). Where appropriate, the district court may construe a request for a Guideline-based sentence reduction under §2255 as a motion for a sentence reduction under §3582(c).  United States v. Guerrero, 691 F.App'x 179, 2017 U.S. App. LEXIS 11007, 2017 WL 2703676 (5th Cir., June 21, 2017), citing Castro v. United States, 540 U.S. 375, 381-82, 124 S.Ct. 786, 157L.Ed.2d 778 (2003).

However, construing Johnson's motion as a request for §3582(c)(2) relief would be inappropriate in the present case because §3582(c)(2) applies only to retroactive Guideline amendments which are listed in U.S.S.G. §1B1.10, which Amendment 794 is not. Guerrero, 691 F.App'x at *180, citing United States v. Jones, 596 F.3d 273, 276 (5th Cir. 2010).  Johnson has not

shown any basis for §2255 relief on his claims, and his motion to vacate or correct sentence should be denied.

### Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a §2255 proceeding unless a circuit justice or judge issues a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  Rule 11 of the Rules Governing §2255 Proceedings in the United States District Courts provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued only if the movant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2).

Under the controlling standard, the movant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), *quoting* Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). This requires a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  United States v. Munoz, slip op. no. 19-31010, 2021 U.S. App. LEXIS 3113, 2021 WL 406102 (5th Cir., February 4, 2021), *quoting* Slack, 529 U.S. at 484.

Johnson has not made a substantial showing of the denial of a constitutional right.  Nor has he shown that reasonable jurists could debate whether his motion to vacate or correct sentence should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further.  Consequently, he is not entitled to a certificate of appealability.

### RECOMMENDATION

It is accordingly recommended that the above-styled motion to vacate or correct sentence be denied.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections.  Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 9th day of February, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE